**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| AMG Resources Corporation,<br><br>Plaintiff,<br><br>v.<br><br>Canadian Metal Commodities Incorporation, et al.,<br><br>Defendants. | No. CV-19-00409-PHX-DLR<br><br>**ORDER** |

Before the Court is Defendants Canadian Metal Commodities, Inc. ("CMC") and Gerald Mrakava's motion to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2). (Doc. 18.) The motion is fully briefed (Docs. 22, 25), and the Court heard oral argument on July 15, 2019. For the reasons stated below, Defendants' motion is granted.

**I. Background**

Plaintiff AMG Resources Corporation ("AMG") is a processor and marketer of scrap metal incorporated in Delaware with its principal place of business in Allegheny County, Pennsylvania. (Doc. 19-1 at 145.) AMG also has commercial offices around the country, including one in Phoenix, Arizona. (*Id.* at 164-66.) CMC is a seller of scrap metal incorporated in Canada with its principal place of business in Canada. (Doc. 20 ¶¶ 2, 4.) Mrakava is a Canadian citizen and the sole officer and director of CMC. (*Id.* ¶¶ 1-3.)

In November 2016, Mrakava reached out to James Orendorff, a resident of Phoenix,

Arizona and President of AMG's Pacific Division, in hopes of forming a business relationship. (¶¶ 10-11.) After brief phone discussions, Orendorff flew to Calgary, Alberta, Canada to meet with Mrakava to discuss the possibility of AMG distributing CMC's scrap metal in the United States. (¶¶ 11-12.) Following his return to Arizona, Orendorff told Eric Goldstein, AMG's President, to begin drafting a non-disclosure agreement ("NDA"). (¶ 13; Doc. 1 ¶ 11.) Orendorff then forwarded the NDA drafted by Goldstein to Mrakava. (Doc. 1 ¶ 12.) Although the parties exchanged several drafts of the NDA and participated in a conference call to discuss the terms, they never finalized or agreed to terms of the NDA. (¶¶ 13-14; Doc. 20 ¶¶ 13, 16, 18.) Regardless, the parties formed a business relationship and agreed in January 2017 to the terms of a Scrap Metal Brokering and Shipping Arrangement (the "Master Contract"), although the parties dispute who drafted it.[1] (Doc. 1 ¶¶ 14-15; Doc. 20 ¶¶ 20-21.)

Following the drafting of the Master Contract, AMG and CMC engaged in several preliminary arrangements for transactions in which AMG would send railcars to Canada to pick up scrap metal from CMC and deliver it to customers in Iowa and Indiana. (Doc. 19-1 at 11-15.) The parties arranged four transactions in total, but ultimately no scrap metal was delivered to Iowa or Indiana. (*Id.* at 15-18.)

Based on these four failed transactions, AMG filed a lawsuit against Defendants in the Court of Common Pleas of Allegheny County, Pennsylvania, alleging breach of contract and fraud claims (the "Pennsylvania Litigation"). (*Id.* at 6-20). Defendants moved to dismiss the claims for lack of personal jurisdiction and the court granted their motion. (*Id.* at 37, 160-62.) AMG did not appeal the Pennsylvania court's decision; instead it filed this action, which is nearly identical to the complaint filed in the Pennsylvania Litigation "save for its references to 'Pennsylvania' (instead of 'Arizona') in its jurisdictional allegation." (Docs. 18 at 6; 1 ¶ 9.) Defendants again have moved to dismiss the claims

---

[1] AMG contends that Goldstein drafted the Master Contract in Pennsylvania. (Doc. 19-1 at 145.) Defendants contend that Mrakava drafted the Master Contract in Canada. (*Id.* at 48.) This dispute is immaterial to the Court's jurisdictional analysis because the Master Contract was either drafted in Pennsylvania by Goldstein or in Canada by Mrakava, not in Arizona by Orendorff.

- 2 -

against them for lack of personal jurisdiction.

## II. Legal Standard

"Where a defendant moves to dismiss a complaint for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that jurisdiction is appropriate." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). In the absence of an evidentiary hearing, and where the plaintiff's proof is based on written materials, "the plaintiff need only make a prima facie showing of jurisdictional facts." *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990). The court must assume the truth of uncontroverted allegations in the plaintiff's complaint, and conflicts between facts contained in the parties' affidavits must be resolved in the plaintiff's favor. *Am. Tel. & Tel. Co. v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 588-89 (9th Cir. 1996). The court, however, "may not assume the truth of allegations in a pleading which are contradicted by an affidavit."[2] *Data Disc, Inc., v. Sys. Tech Assocs., Inc.*, 557 F.2d 1280, 1284-85 (9th Cir. 1977).

## III. Discussion

### A. Personal Jurisdiction Principles

"Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons." *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014). Arizona allows courts to exercise jurisdiction co-extensive with federal due process standards. Ariz. R. Civ. P. 4.2(a). The Court therefore may exercise personal jurisdiction over a defendant who is not physically present in the state if the defendant has sufficient minimum contacts with the state such that the suit can be maintained without offending traditional notions of fair play and substantial justice. *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

Personal jurisdiction may be general or specific depending on the strength of the defendant's contacts with the forum state. *Id.* at 317-18. General personal jurisdiction

---

[2] Here, AMG submitted a complaint verified by Goldstein. "A verified complaint may be used as an opposing affidavit" provided it is based on the verifier's personal knowledge. *See Schroeder v. McDonald*, 55 F.3d 454, 460 (9th Cir. 1995). Defendants have not objected to any portion of AMG's verified complaint as lacking foundation.

- 3 -

exists over a non-resident defendant when the defendant's contacts with the forum state are so continuous and systematic "as to justify suit against it on causes of action arising from dealings entirely distinct from those activities." *Id.* Where a defendant's contacts are not so substantial, a court can exercise specific personal jurisdiction when a lawsuit arises out of the defendant's activities within the forum state. *Helicopteros Nacionales de Colo., S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984). Here, AMG does not contend that the Court has general personal jurisdiction over Defendants. The issue is whether the Court can exercise specific personal jurisdiction.

In determining whether the Court can exercise specific personal jurisdiction over a non-resident defendant, the Court employs a three-pronged test:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Schwarzenegger*, 374 F.3d at 802. The plaintiff bears the burden of satisfying the first two prongs. *Id.* "If the plaintiff fails to satisfy either of these prongs, personal jurisdiction is not established in the forum state." *Id.* If the plaintiff satisfies the first two prongs, the burden shifts to the defendant to "present a compelling case that the exercise of jurisdiction would not be reasonable." *Id.*

For claims dependent on the existence of an underlying contract, the Court generally applies the purposeful availment test, which examines whether there was "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958). For claims sounding in tort, the Court generally applies the purposeful direction test, which looks at whether the defendant purposefully directed

its actions at the forum state. *Morrill v. Scott Fin. Corp.*, 873 F.3d 1136, 1142 (9th Cir. 2017). Here, the Court applies the purposeful availment test because AMG's fraud claim is based on the underlying breach of contract claims and the alleged misrepresentations made by Defendants in entering the contracts. *See Gray & Co. v. Firstenberg Mach. Co.*, 913 F.2d 758, 760 (9th Cir. 1990) (applying the purposeful availment test when the plaintiff brought interrelated contract and misrepresentation claims).

The existence of a contract alone does not automatically establish minimum contacts. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478 (1985). Instead, when contract claims are at issue, courts examine "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing[.]" *Id.* at 479. There must be "actions by the defendant *[itself]* that create a 'substantial connection' with the forum State[]" in the form of "continuing obligations[.]" *Id.* at 475-76 (emphasis in original). Further, "[d]ue process requires that a defendant be hauled into court in a forum State based on [its] own affiliation with the State, not based on the 'random, fortuitous, or attenuated' contacts [it] makes by interacting with other persons affiliated with the State." *Walden v. Fiore*, 571 U.S. 277, 286 (2014).

### B. Defendants Did Not Purposefully Avail Themselves of Arizona

In light of these principles, Defendants have not purposefully availed themselves of the privilege of conducting activities within Arizona. AMG argues that Defendants purposefully availed themselves of the privilege of conducting activities in Arizona by soliciting business in Arizona and communicating with Orendorff, an Arizona resident. (Doc. 22 at 11.) Although the fact that Defendants initiated contact with AMG in Arizona weighs slightly in favor of finding purposeful availment, Defendants' contacts with Orendorff did not create a substantial connection with Arizona when put in context of the overall business relationship. *See Burger King Corp.*, 471 U.S. at 475.

Indeed, nothing about the performance of the contracts to transport and sell scrap metal in Iowa and Indiana—which are the specific transactions that form the basis of AMG's complaint—occurred or was intended to occur in Arizona. Based on the invoices,

payments for the scrap metal were to be sent by Mrakava in Canada to AMG in Pennsylvania. (Doc. 19-1 at 135, 139-40, 146.) The scrap metal was to be collected in Canada by railcars ordered from Pennsylvania and delivered to customers in Iowa and Indiana. (*Id.* at 141, 146.) The metal was never brought into Arizona, nor was it contemplated that any scrap metal would be brought here. Defendants' alleged breaches therefore did not result in harm felt in Arizona.

At bottom, Defendants' forum-related contacts consist of nothing more than a few phone calls, emails, and documents exchanged between Mrakava in Canada and Orendorff in Arizona. These attenuated contacts with an Arizona resident are insufficient to constitute purposeful availment of the forum, especially when nothing about the performance of the contracts at issue was to occur in Arizona. *See Walden*, 571 U.S. at 286.

Moreover, Defendants' continuing obligations were with AMG in Pennsylvania. *See Burger King Corp.*, 471 U.S. at 476. It appears that Defendants' contacts with Orendorff in Arizona were in furtherance of negotiations, agreements, and transactions with AMG in Pennsylvania. (Doc. 1 ¶¶ 11-16.) Although Orendorff might have "managed" the business transaction from Arizona, he did so essentially by acting as a middleman between Defendants and the AMG personnel in Pennsylvania that ultimately would be responsible for executing AMG's end of the bargain. (Doc. 22 at 11.)

Aside from these communications, AMG relies on Defendants' answers to its request for admissions in the Pennsylvania Litigation, in which they indicated that they thought they were dealing primarily with Orendorff in Arizona.[3] (Doc. 19-1 at 91-92, 94.)

---

[3] Defendants argue that AMG's pleadings and affidavits in the Pennsylvania Litigation should be treated as binding judicial admissions. *See Am. Title. Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224, 226 (9th Cir. 1988) ("factual assertions in pleadings and pretrial orders, unless amended, are considered judicial admissions conclusively binding on the party who made them."). Although the Ninth Circuit seems not to have squarely considered this issue, other circuits have held that admissions in one court proceeding are generally not considered binding in other litigation. *See Nextdoor.com, Inc. v. Abhyanker*, No. C-12-5667 EMC, 2013 WL 3802526, at *8 (N.D. Cal. July 19, 2013) (collecting cases from other jurisdictions). These admissions can be used as evidence in other lawsuits, but nothing more. *Id.* For purposes of this order, the Court considers pleadings and responses to request for admissions from the Pennsylvania Litigation as evidence, not binding judicial admissions.

| | |
|---|---|
| 1 | Based on those responses, AMG claims that Defendants argued in the Pennsylvania |
| 2 | litigation that Arizona was an appropriate forum. (Doc. 22 at 1.) AMG's contention that |
| 3 | Defendants are now somehow judicially estopped from disputing jurisdiction, however, is |
| 4 | misguided. Nowhere in the relevant Pennsylvania filings did Defendants admit, concede, |
| 5 | or otherwise argue that Arizona was an appropriate forum. At most, Defendants admitted |
| 6 | that they *thought* they were dealing principally with Orendorff in Arizona. (Doc. 19-1 at |
| 7 | 91-92, 94.) Although Defendants' subjective beliefs have some relevance to the personal |
| 8 | jurisdiction question, the Court cannot ignore the fact that no meaningful part of the |
| 9 | agreements at issue was to be performed in Arizona. |
| 10 | Indeed, far more telling than Defendants' responses to AMG's requests for |
| 11 | admissions in the Pennsylvania Litigation are AMG's affidavits. In the Pennsylvania |
| 12 | Litigation, Goldstein admitted that the proper venue for the action was Allegheny, |
| 13 | Pennsylvania. (Doc. 19-1 at 145.) He further admitted that AMG in Pennsylvania drafted |
| 14 | and negotiated the agreements and arranged the transactions and purchase confirmations. |
| 15 | (*Id.* at 145-46.) These admissions further support the conclusion that Orendorff acted as a |
| 16 | middleman to facilitate communication between AMG in Pennsylvania and CMC in |
| 17 | Canada. |
| 18 | In sum, AMG has not shown that Defendants purposefully availed themselves of |
| 19 | the privilege of conducting activities within Arizona. The Court therefore lacks specific |
| 20 | personal jurisdiction over Defendants. *See Pebble Beach Co. v. Caddy*, 453 F.3d 1151, |
| 21 | 1155 (9th Cir. 2006) (noting that where a plaintiff fails to satisfy the first prong of the |
| 22 | specific personal jurisdiction analysis, the court need not examine the remaining prongs). |
| 23 | // |
| 24 | // |
| 25 | // |
| 26 | // |
| 27 | // |
| 28 | // |

**IT IS ORDERED** that Defendants' motion to dismiss (Doc. 18) is **GRANTED**. This action is dismissed without prejudice. The Clerk of the Court shall enter judgment accordingly and terminate this case.

Dated this 6th day of August, 2019.

Douglas L. Rayes
United States District Judge